## JAMES P. HAWKINS *v*. THE NATIONAL LIFE IN-SURANCE COMPANY.

### *Usury.   Practice.*

In an action to recover for usury, the plaintiff testified, that he gave his note to the defendant for $5,000, payable in three years with annual interest, secured by mortgage on his farm, and received therefor $4,700; that, in about two years, he had paid $77; that the defendant was threatening to foreclose; that thereupon he sold his farm, a part to B. and a part to D., under an arrangement with the defendant, that they should pay its mortgage partly in money and the balance in their notes, the last one running ten years; and that the defendant in settling with the plaintiff charged one per cent on these exchange notes, making about $435. The defendant admitted the $300 was usury, offered no evidence, and declined to go to the jury; *Held*, (1) all that the evidence tended to prove should be taken as proved; (2) that the arrangement in effect was an extension of the original loan, and the $435 was usury.

ASSUMPSIT in common counts for usury.   Trial by jury, June Term, 1884, ROYCE, Ch. J., presiding.   Judgment for plaintiff to recover $471.67.

The plaintiff introduced in evidence a promissory note for the sum of $5,000 executed by him to the defendant, dated September 23, 1875, payable in three years from date with annual interest.   The defendant admitted $300 of $5,000 note was usury, and paid into court enough to cover this, the interest, and cost.   It was agreed that if the plaintiff was entitled to recover only upon the admitted portion of his claim, the verdict should be for $471.67, and that otherwise it should be $1,087.34.   The plaintiff testified and then rested; the defendant rested without offering any evidence. The plaintiff testified, that he received $4,700 for his note less $10 paid to Mr. Dewey, who advanced the money and received the note for the defendant; that the $10 was paid for Dewey's expenses; that up to July 19, 1875, he, the plaintiff, had paid $77.50; that defendant was pressing him

for the interest, and he proposed to the company's agent to sell a part of the farm and pay up the loan; that a part of the .farm was sold to a Mr. Danyeau for $1,300, which he paid to the defendant, $600 in money and $700 in notes, $100 each, and one note payable each year; that Dewey told him when this trade was consummated—July 10, 1877,—that he should have to charge him one per cent on the notes. The plaintiff further testified, that he sold 232 acres of the farm to Ezra M. Ball and was to receive therefor $5,500; that this last trade was closed, July 19, 1877, when Mr. Dewey, the defendant's agent, was present at the town clerk's office in Ferrisburgh. He further testified: "Messrs. Dewey and Ball had drawn up a mortgage from Mr. Ball to the company, covering the land I had sold to Mr. Ball to secure the company for the notes received of Ball. Mr. Dewey had figured out what was coming to me, about $156. I told him I could not go on with the business. He told me I must or he would fore-close. Under that arrangement I went on and finished the business and was ruined."

Q. " 'Was there any inquiry as to how Mr. Dewey figured this amount out ?' A. 'Yes, sir; and he showed me a paper on which he had figured it out.'

Q. " 'What did he say about it ?' A. 'He said he had figured it all out here and I could keep it to look over.'

Q. " 'What did you understand by the figures on that paper ?' A. 'The $4,000 represent the amount of the notes he received from Ball, and the $1,244.52 represent the cash he received at that time.'

Q. " 'In these amounts, what item, if any, was for other than the interest?' A. 'There was an item for $25 which he charged for coming down at the time I saw him at Ball's store and for the other time when I sent for him.'

Q. " 'The amount of money that was paid Mr. Dewey for the company over what he was entitled to, as you claim, and the three hundred dollars agreed upon at the time you made the loan—how was it made up?' A. 'He figured one per cent a year on the $4,000 of notes which Ball gave him, that were to run ten years, making about $400; the rest of it, about $35, was on account of the notes Mr. Danyeau gave him.'

Q. " ' How was that figured?' A. ' At one per cent.'

Q. " ' How was the amount made up?' A. ' By figuring at one per cent upon the notes for the time they were to run, nine months being added to the time of each note.'

Q. " ' How much money did Mr. Dewey take out of you at this time besides the $25 for expenses?' A. ' About $435.'

Q. " ' In the arrangements at this time when Mr. Danyeau had given Mr. Dewey a mortgage and Mr. Dewey had taken another from Ball, what became of the mortgage you gave originally?' A. ' It was cancelled.'

Q. " ' These two mortgages from Danyeau and Ball to the Company included what?' A. ' All the premises originally mortgaged except the Brush lot, of 28 acres, which I afterwards sold for $490.'

Q. " ' The two mortgages did not cover that place?' A. ' No, sir.'

Q. " ' Did the mortgage from Ball to the Company cover anything else than the farm?' A. ' It included the homestead which was sold by Mrs. Porter to Ball.' "

On cross-examination :

Q. " ' Was there any understanding that you were to pay anything more than $300?' A. ' No, sir.'

Q. " ' You sold this land to Danyeau for $1,300, of which $600 was to be paid in cash and $700 lay in notes?' A. ' Yes, sir.'

Q. " ' These notes were made payable to the company or the order of its president?' A. ' Yes, sir.'

Q. " ' You supposed your business was with the company and that Mr. Dewey acted for the company?' A. ' Yes, sir.'

Q. " ' Mr. Ball bought this land from you?' A. ' Yes, sir.'

Q. " ' The notes for that $4,000 went directly to the company and not to Mr. Dewey?' A. ' Yes, sir.'

Q. " ' These notes from Danyeau and Ball were given for the right sum?' A. ' Yes, sir.'

Q. " ' Was there any bonus included in these notes?' A. ' No, sir; that extra sum of which I spoke was paid in cash to Mr. Dewey at that time.'

Q. " ' You say the bonus was paid by them; did they pay the cash over to Mr. Dewey?' A. ' Yes, sir, except $156 to me.'

Q. " ' These notes for $700 represented a part of the pur-

chase money, and the others from Ball to the company the remainder?' A. ' Yes, sir.'

Q. "'The extra interest paid on these notes was retained from what was due you?' A. ' Yes, sir.'

Q. "'They received this money because they held the mortgage?' A. ' Yes, sir.'

Q. "' You claim that was your money paid by you to the company?' A. ' Yes, sir.'

Q. "' Was there any agreement between you and Danyeau and Ball that they were to make up the extra interest to you?' A. ' No, sir.'

Q. "' That came out of you and was on account of the indebtedness of Danyeau and Ball to the company?' A. ' Yes, sir.'"

*Stewart & Wilds* and *E. R. Hard*, for the plaintiff.

What was this money taken out of Hawkins?

The relationship of borrower and lender had not terminated, and did not terminate until this money was received by Dewey.

It was taken out of the money that belonged to Hawkins arising from the sale of his property. It was his money.

He was made to believe that it was for his benefit.

It was computed upon the loan then owing by Hawkins, at the rate of one per cent extra for the time the loan was to be extended.

And the only consideration afforded by the defendant was the extension of the loan. None other was pretended. If it had been otherwise it would have been very easy for Dewey to have so testified upon the stand.

No legal consideration for extra interest is found in renewals or extensions. *Walker* v. *Bank*, 3 How. 291; *Swartwout* v. *Payne*, 19 Johns. 294; 1 Am. Dec. 559; *Nichols* v. *Bellows*, 22 Vt. 586; *Lafountain* v. *Savings Bank*, 56 Vt. 337; 2 Pet. 527; 2 La. 114; 2 Am. Dec. 300.

*Pitkin & Huse*, for the defendant.

The $10 deducted for expenses was not usury. *Smith* v. *Wolf*, 55 Iowa, 555; *Hutchinson* v. *Hosmer*, 2 Conn. 341.

Hawkins *v.* Insurance Co.

The loan from the defendant to the plaintiff was paid in July, 1877, and not extended. The debts then created and thereafter existing were from Danyeau and Ball to the defendant, and the plaintiff was not in any way held upon them; and the plaintiff's liability to the defendant was then extinguished. The indebtedness included in the Danyeau and Ball debts was not the same as that which had existed from the plaintiff to the defendant, because it was from different parties, for a different amount, upon different time, and secured upon different property. The $435 bonus was computed upon and paid on account of the Danyeau and Ball debts and was exacted for the purpose of getting something more than the legal rate of interest for forbearance of them. That bonus, then, was not paid upon any loan to the plaintiff, or for forbearance of any indebtedness from him. It was not paid by the borrowers or debtors and was not interest. It was simply a bonus paid by a third person and was not usury. *Gleason* v. *Childs*, 52 Vt. 421; *McArthur* v. *Schenck*, 31 Wis. 673; *Madison University* v. *White*, 25 Hun, 490.

Moreover, as that bonus was paid to induce the defendant to take the Danyeau and Ball notes in part payment of or in exchange for the $5,000 note, the transaction was in effect a sale or exchange of securities and the sum paid was not usury. 7 Wait Act. & Def. 619; *Culver* v. *Bigelow*, 43 Vt. 249.

The opinion of the court was delivered by

TAFT, J. When the plaintiff's evidence was in, the defendant offered none, and declined to go to the jury upon any of the facts in controversy. The plaintiff therefore had the right to have taken as proven all that his evidence had a tendency to establish. *Hamblet* v. *Bliss*, 55 Vt. 535. We think the testimony of the plaintiff tended to show that the arrangement of the 19th of July, 1877, was in substance a trade between the plaintiff and defendant, and in effect an

extension of the loan originally made the plaintiff; and that the bonuses were paid by the plaintiff in respect to, and for the purpose of procuring such extension.   This fact being treated as established no question is made but that the transaction was usurious in respect to the payment of the bonus made at the time named in July, 1877.   The judgment therefore should have been for the larger sum.

Judgment reversed and judgment for plaintiff for $1087\frac{34}{100}$ dollars and interest since the judgment below.